IRA P. EVANS, Respondent, *v.* JOSEPH BIDLEMAN, et al., Appellants.

The plaintiff consigned goods to M'L., who sold them and received the proceeds. M'L. was the partner of a firm (and one of the defendants), which being in want of funds, proposed to another partner, B. (also a defendant), to loan the money of plaintiff, in his hands, for the purposes of the firm, to be repaid when funds of the firm could be had; which was consented to, and the money advanced under this arrangement. The firm was sued for the money so loaned.

Held, that there was no privity between the plaintiff and defendants on which to establish the relation of debtor and creditor. That M'L., as agent of plaintiff, had no authority to loan the money to the defendants, and it can only be regarded as an advance by one partner to the partnership concern, for which they are liable to him, and that M'L. alone is liable to plaintiff.

APPEAL from the Superior Court of San Francisco.

The complaint stated that the defendants in this case, Bidleleman, M'Leman, M'Coy, and Laffan were partners, doing business under the name of "The Pacific Brewery and Distillery Company;" that the plaintiff lent the defendants, at their request, divers sums of money, amounting in the whole to $735 94, of which there were repaid $100, and the balance, $635, remained due and unpaid, with interest, &c.

The writ was served upon Bidleman alone, who answered, and denied the partnership, and denied the alleged loan and all indebtedness.

On the trial before a jury, James M'Leman was sworn for plaintiff, and testified that he knew the plaintiff, not personally, but by correspondence; that he knew defendants; that they were associated in business, under the firm of "The Pacific Brewery and Distillery;" that he knew of money borrowed by the defendants of the plaintiff, in the fall of 1850, the amount $735; that defendants are entitled to a credit of $100 paid.

On cross-examination the witness said: "I am one of the defendants in this suit, one of the partners. I borrowed this money, with the consent and direction of Mr. Bidleman. I borrowed it of the plaintiff's agent. I was the agent of the plaintiff from whom this money was borrowed. I borrowed it from myself as

such agent. I had funds in my hands, as the proceeds of goods consigned to me by the plaintiff, to be sold, and sold by me for his account. The defendants' firm was in want of money to use and pay off wages. I applied to Bidleman, to whom all the goods manufactured for the company were sent for sale, and who was bound to furnish all funds for disbursements for these purposes. He requested me to wait till after steamer day. I told him I had some funds on hand, the proceeds of the plaintiff's goods consigned to me, and that if I could rely on their being refunded, I would use them for the purpose. He told me to do so, and he would refund or return them. I did use them so, accordingly; the thing thus run along some time, and the money has never been returned. I was not indebted to the firm."

The witness further said that the plaintiff was in the habit of consigning goods to him, and he of remitting the proceeds to plaintiff from sales of his goods as instructed by him, and this was the extent of his agency for plaintiff.

"I directed this suit to be brought as plaintiff's agent. If the money is recovered, it will be paid over to me as plaintiff's agent.

"I kept a bank account at this time in my own name, and deposited in that account all funds, as I received them, that came into my hands as an individual, as distinguished from the said firm." The witness kept the firm accounts and books.

The plaintiff here rested his case, and the defendants asked for a nonsuit, which the court refused, and instructed the jury to find for the plaintiff for the amount proved, who found for plaintiff $731 72 and interest; and a new trial being refused, defendants appealed.

*Hackett*, for appellants.

M'Leman was agent merely as the consignee, and for the sale of the goods of plaintiff, and to remit the amounts received by him. The money received for the goods sold, was not the plaintiff's, but his own, and he was debtor to the plaintiff for the amount, and not agent. He deposited the money in his own name, and treated it as his own.

Could the plaintiff have sued the Bank for the money deposited? If M'Leman had died, who would have had the money, Evans, or his administrator?

The money, in specie, was not the plaintiff's property.   The agreement with Bidleman was not a loan of money, but an arrangement by which one partner advanced money for the benefit of the firm.

The plaintiff never authorized the loan or directed the suit, and on the trial M'Leman appears in the character of agent, partner, plaintiff, defendant, and a witness.

*Brooks, Martin,* and *M'Cracken,* for respondents.

M'Leman was the agent of Evans, and could not change his character in this respect by depositing Evans's money in bank. It was distinctly shown that the money belonged to Evans.   The test is, was this money the proceeds of Evans's merchandise ? M'Leman having received it in a fiduciary capacity, could not by his own act change its character.   The proof is that the money was not an advance but a loan.

MURRAY, Chief Justice, delivered the opinion of the court. HEYDENFELDT, Justice, concurred.

The court below erred in overruling the motion for a nonsuit.

There was no privity between the plaintiff and the defendants, on which to establish the relation of debtor and creditor.

The defendant M'Leman had no authority as agent of Evans to loan the money in controversy to the defendants, and it can only be regarded as an advance by one partner to the partnership concern, for which they are liable to him, while M'Leman alone is liable to the plaintiff.

Judgment reversed.